IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

MARK D. MARSHALL,

                Plaintiff,

      v.

SEAN SALTER; GREG GRAMS
and BURT TAMMINGA,

                Defendants.

OPINION and ORDER

07-cv-715-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      In this case brought under 42 U.S.C § 1983, plaintiff Mark Marshall contends that defendants Sean Salter, Greg Grams and Burt Tamminga violated his rights under the Eighth Amendment when (1) all three defendants denied him access to out-of-cell exercise for 160 days over a thirteen-month period and (2) defendant Salter allowed plaintiff to be exposed to the strong smell of other prisoners' feces and urine.  Plaintiff is a prisoner who was housed at the Columbia Correctional Institution at times relevant to this case.

      Now before the court are the parties' cross motions for summary judgment.  Because plaintiff has failed to adduce evidence that he was denied of out-of-cell exercise for a period of time sufficient to amount to cruel and unusual punishment, or that prison officials failed

1

to take reasonable steps to mitigate the smell of feces and urine in the unit where plaintiff was housed, I will grant defendants' motion for summary judgment and deny plaintiff's motion.

Before turning to the facts of this case, a brief discussion of its history is warranted. In late 2006, plaintiff filed his original complaint in which he raised the claims at issue here. In his complaint, plaintiff named 21 defendants and identified a multitude of unrelated claims against them regarding the conditions at the Columbia Correctional Institution. Shortly after I screened plaintiff's complaint in his first case, case no. 06-cv-617-bbc, he filed another multi-count, multi-defendant complaint in case no. 07-cv-173-bbc; that complaint related to events that occurred after he was moved to the Waupun Correctional Institution in Waupun, Wisconsin.

Plaintiff requested that the court appoint counsel to assist him with both cases. As the cases progressed, it became clear that because of his mental illness, plaintiff was not capable of pursuing such a large number of claims, several of which presented complicated issues of fact and law. Therefore, I began an exhaustive search for an attorney willing to represent plaintiff on all of his claims. This effort was unsuccessful initially.

In September 2007, the Court of Appeals for the Seventh Circuit issued its decision in George v. Smith, 507 F.3d 605 (7th Cir. 2007), in which it made clear that district courts must sever multiple claims against multiple defendants unless the parties and claims are

2

joined properly under Fed. R. Civ. P. 18 and 20.  Because plaintiff's complaints alleged numerous different injuries arising out of unrelated incidents and no single question of law or fact was common to the claims as a whole, I directed him to inform the court which of the claims he wished to pursue in each case.  Plaintiff chose to pursue two sets of claims identified in case no. 06-cv-617-bbc and one claim identified in case no. 07-cv-173-bbc and to voluntarily dismiss the remainder of his claims.  Because plaintiff could not pursue two different sets of claims in case no. 06-cv-617-bbc, I severed them into two lawsuits, allowed plaintiff to pursue one set of claims in case no. 06-cv-617 case and opened this case, in which plaintiff is pursuing the second set of claims.  Once the scope of the claims plaintiff was pursuing had been limited in this way, the law firm of Garvey, McNeil & McGillivray agreed to represent plaintiff on the claims he was pursuing in case numbers 06-cv-617-bbc and 07-cv-173-bbc, but not this case.  Given the previous exhaustive search for counsel, the limited likelihood that the appointment of a lawyer would improve plaintiff's chances of succeeding on the merits of these claims and the fact that plaintiff's claims in this case are far narrower and simpler, both legally and factually, than those he had been pursuing previously, I determined that plaintiff could proceed with this lawsuit without counsel.

From the facts proposed by the parties, I find that the following facts are material and undisputed.

3

UNDISPUTED FACTS

A.  <u>Parties</u>

Plaintiff Mark Marshall is a prisoner who is presently housed at the Waupun Correctional Institution in Waupun, Wisconsin.  Plaintiff was housed at the Columbia Correctional Institution in Portage, Wisconsin from July 12, 2005 until October 12, 2006. All three defendants work at the Columbia Correctional Institution; Grams is the warden, Tamminga is an institution complaint examiner and Salter is an administrative captain who was assigned to "Disciplinary Segregation Unit 1."

B.  <u>Disciplinary Actions and Loss of Recreation</u>

On September 16, 2005, plaintiff was found guilty of disruptive conduct as charged in conduct report #1190869.  He lost five days' recreation as a result of this conduct report. Also on September 16, plaintiff was found guilty of disobeying orders, disruptive conduct and misuse of prescription medication as charged in conduct report #1727139.  He received 180 days in disciplinary segregation and lost 15 days of recreation as a result of this conduct report.

On September 26, 2005, plaintiff was found guilty of disobeying orders, disrespect and disruptive conduct as charged in conduct report #1708091.  He received 90 days in disciplinary segregation and lost 15 days of recreation as a result of this conduct report.  Also

4

on September 26, plaintiff was found guilty of disobeying orders, disrespect and disruptive conduct as charged in another conduct report, #1708092.   He received 120 days in disciplinary segregation and lost 20 days of recreation as a result of this conduct report.

On October 17, 2005, plaintiff filed offender complaint number CCI-2005-31886, in which he complained about the loss of out-of-cell recreation while he was in segregation status.  This complaint was reviewed by defendant Tamminga, who recommended that the complaint be dismissed.  Defendant Grams dismissed the complaint on November 2, 2005. Plaintiff appealed this decision to a corrections complaint examiner on November 8, 2005. The corrections complaint examiner recommended dismissal; the complaint was dismissed by the office of the Secretary of the Department of Corrections on November 8.

On November 28, 2005, plaintiff was found guilty of "threats," disobeying orders, disrespect and disruptive conduct as charged in conduct report #1708142.  He received 360 days in disciplinary segregation and lost 20 days of recreation as a result of this conduct report.

On February 3, 2006 plaintiff was found guilty of "threats," disobeying orders, "possession, manufacturing and alteration of weapons" and disfigurement as charged in conduct report #1708193.  He received 240 days in disciplinary segregation and lost 15 days of recreation as a result of this conduct report.

On March 17, 2006, plaintiff was found guilty of disobeying orders and disruptive

5

conduct as charged in conduct report #1708270.   He received 90 days in disciplinary segregation and lost 45 days of recreation as a result of this conduct report.   Plaintiff appealed this decision to defendant Grams, who modified the hearing officer's decision to 90 days of disciplinary segregation only.   Plaintiff argued that his behavior was caused by clinical issues but did not dispute the underlying facts that led to the issuance of the conduct report.

Also on March 17, 2006, plaintiff was found guilty of "threats," disobeying orders, disrespect and disruptive conduct as charged in conduct report #1708283.   He received 240 days in disciplinary segregation and lost 10 days of good time credits and 20 days of recreation as a result of this conduct report.

On April 10, 2006, plaintiff was found guilty of "threats," disobeying orders, disrespect and disruptive conduct as charged in conduct report #1708296.   He received 360 days in disciplinary segregation and lost 10 days of recreation as a result of this conduct report.   Plaintiff appealed this decision to defendant Grams, who modified the hearing officer's decision to 300 days of disciplinary segregation only.   Plaintiff argued that his behavior was caused by clinical issues but did not dispute the underlying facts that led to the issuance of the conduct report.   Grams noted that the violations were "very serious," that plaintiff had a history of poor conduct and that the result was appropriate in light of these considerations.

6

On April 14, 2006, plaintiff was found guilty of "threats," disobeying orders, disrespect and disruptive conduct as charged in conduct report #1708313.  He received 360 days in disciplinary segregation and lost 20 days of good time credits and 30 days of recreation as a result of this conduct report.

On September 8, 2006, plaintiff was found guilty of "threats," disobeying orders, disrespect and disruptive conduct as charged in conduct report #1708283.  He received 240 days in disciplinary segregation and lost 10 days of good time credits and 20 days of recreation as a result of this conduct report.   Plaintiff appealed this decision and on September 11, 2006, the decision was modified to 6 days in Adjustment Segregation,  and loss of 10 days of good time credits and 20 days of recreation.

Prisoners are permitted to exercise inside their cells at the Columbia Correctional Institution.

## C.  Conditions of Segregation Unit

There are three segregation units at the Columbia Correctional Institution. Disciplinary Segregation Unit 1 is where prisoners are placed when they are first moved to segregation, are having behavioral problems or are placed on observation status.  Typically, prisoners housed in this unit are those who are the most difficult to control and supervise. Disciplinary Segregation Unit 2 is a step-down unit, where prisoners are placed when they

7

have "moved up in security's view."  The Special Management Unit is used to house mentally ill and vulnerable prisoners.

Plaintiff was housed in Disciplinary Segregation Unit 1 from January 23, 2006 until April 1, 2006.  While he was housed in this unit, plaintiff was exposed to the smell of two other prisoners' "fecal matter and urine," which they had spread on the walls and floor of their cells and in the ventilation system.  When a prisoner smears feces, urine or blood in his cell, unit staff try to remove him from his cell as soon as possible in order to clean the cell. Cells are cleaned with a pressure washer and a disinfectant cleaner.  Prison staff members were aware that the two prisoners in Disciplinary Segregation Unit 1 smeared feces and urine in their cells; they attempted to clean the cells as quickly as possible.

Prisoners who are experiencing health problems may submit a Health Services Request form to the Health Services Unit at the Columbia Correctional Institution.  Plaintiff was seen by the Health Services Unit approximately 24 times while he was housed in Disciplinary Segregation Unit 1; there is no indication in plaintiff's medical record for this period that he informed Health Services Unit staff of his reaction to the smell of feces and urine.

OPINION

A.  Denial of Out-of-Cell Exercise

The Eighth Amendment requires humane prison conditions.  When evaluating whether particular prison conditions violate the Eighth Amendment, courts consider first whether the conditions were "sufficiently serious" that they resulted in the denial of "the minimal civilized measure of life's necessities."  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  This is a high threshold.  Hudson v. McMillian, 503 U.S. 1, 9 (1992) ("Extreme deprivations are required to make out a conditions of confinement claim.").  If a prisoner can establish that the conditions were sufficiently serious, the inquiry turns to whether prison officials acted with "deliberate indifference" to these conditions.  Farmer, 511 U.S. at 847.  Deliberate indifference "means that [a prison official] knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it."  Townsend v. Fuchs, 522 F.3d 765, 773 (7th Cir. 2008) (citing Farmer, 511 U.S. at 847).

The Court of Appeals for the Seventh Circuit has recognized that exercise is "a necessary requirement for physical and mental well-being," and has held that depriving prisoners of out-of-cell exercise opportunities may violate the Eighth Amendment.  Delaney v. DeTella, 256 F.3d 679, 684 (7th Cir. 2001).  However, "short-term denials of exercise" do not violate the constitution.  Thomas v. Ramos, 130 F.3d 754, 764 (7th Cir. 1997)

9

(denial of outdoor exercise for 70 days permissible); <u>Harris v. Fleming,</u> 839 F.2d 1232, 1236 (7th Cir. 1988) (denial of out-of-cell exercise for 28 days permissible); <u>but see</u> <u>Antonelli v. Sheahan</u>, 81 F.3d 1422, 1432 (7th Cir. 1996) (viable constitutional claim when prisoner denied recreational opportunities for 7 weeks); <u>Jamison-Bey v. Thieret</u>, 867 F.2d 1046, 1048 (1989) (reversing summary judgment for prison officials where segregated prisoner denied exercise for 101 days).  Longer denials prompted by a prisoner's uncontrollable behavior are permissible as well; it is not so "intolerable to the sensibilities of a civilized society" that a prisoner must be provided out-of-cell exercise if he has committed serious and violent disciplinary infractions.  <u>Pearson v. Ramos</u>, 237 F.3d 881, 885 (7th Cir. 2001) (denial of out-of-cell exercise for four consecutive 90-day periods reasonable for serious violations of prison disciplinary rules).

The question presented here is whether the denial of 160 days of out-of-cell exercise, meted out for disciplinary violations spanning a period of approximately thirteen months, violates the Eighth Amendment.  (In his response to defendants' proposed findings of fact, plaintiff asserts that it was "mathematically" 230 days, not 160 days.  This appears to be an error and is unsupported by the evidence.) Defendants contend that this case is analogous to <u>Pearson</u>, 237 F.3d at 885, in which the prisoner was violent and dangerous to staff and other prisoners when he was allowed out of his cell and as a result lost a total of 360 days of out-of-cell exercise privileges as disciplinary sanctions.  However, defendants have

10

presented almost no evidence regarding plaintiff's actual behavior that resulted in his loss of out-of-cell exercise time.  Instead, defendants state only that plaintiff received a series of conduct reports for violations including "threats," "disrespect," and "disobeying orders." Therefore, I cannot conclude that plaintiff's behavior was so extreme that a lengthy deprivation of out-of-cell exercise time would have been reasonable.

Defendants' failure to provide additional information about plaintiff's behavior is frustrating, but not dispositive, because plaintiff has failed to adduce evidence regarding how the 160 days when he was not allowed out-of-cell exercise were distributed over the thirteen months he received these disciplinary sanctions.  Although it is not unreasonable to infer from the timing and length of the conduct reports plaintiff received that there were some periods when he was denied out-of-cell exercise for days or perhaps even weeks at a time, the denial of out-of-cell exercise for days or a few weeks does not violate the Eighth Amendment. E.g., Harris, 839 F.2d at 1236.  Perhaps prison officials applied the sanctions consecutively during some periods, but plaintiff has not made such a showing.  Rather, the facts show that some of the disciplinary actions were separated from the others by months, suggesting that plaintiff did have access to out-of-cell exercise periodically.  Given the absence of any evidence regarding the application of the sanctions, it would require the court to speculate impermissibly to find that plaintiff was denied out-of-cell exercise for a consecutive period of time long enough to violate the Eighth Amendment.

11

This lack of evidence is fatal to plaintiff's case.  Although both parties filed motions for summary judgment, it is plaintiff who bears the ultimate burden of proving his case. Therefore, to defeat defendants' motion for summary judgment, he was required to present enough evidence to show that a reasonable jury could conclude that defendants violated his constitutional rights.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  He has not done so; accordingly, his motion for summary judgment will be denied and defendants' motion will be granted.

Because I conclude that plaintiff has failed to adduce evidence that he was denied out-of-cell exercise in violation of his rights under the Eighth Amendment, I need not consider whether any of the defendants exhibited deliberate indifference to this condition or whether qualified immunity would be appropriate.

### B.  Exposure to Odor of Feces and Urine

Next, plaintiff contends that the odor of feces and urine in Disciplinary Segregation Unit 1 at the Columbia Correctional Institution was so severe that his exposure to it violated his rights under the Eighth Amendment.  He asserts that defendant Salter was aware of the stench and took inadequate steps to mitigate it.  As discussed above, to prevail ultimately on a claim that prison conditions violate the Eighth Amendment, a prisoner must show that the conditions were sufficiently serious and that prison officials acted with "deliberate

12

indifference" to these conditions.  <u>Farmer</u>, 511 U.S. at 847.

Prisons must provide "reasonably adequate ventilation, sanitation, bedding, hygenic materials and utilities."  <u>Gillis</u>, 468 F.3d at 493.  Poor ventilation leading to prolonged exposure to foul odors has been found in some circumstances to violate the Eighth Amendment.  <u>See, e.g.</u>, <u>Board v. Farnham</u>, 394 F.3d 469, 485-86 (7th Cir. 2005) (poor ventilation and development of mold that resulted in nosebleeds and respiratory problems violates Eighth Amendment); <u>Keenan v. Hall</u>, 83 F.3d 1083, 1090 (9th Cir. 1996) ("air . . . saturated with the fumes of feces, urine and vomit" violates the Eighth Amendment).

Plaintiff proposes as a fact that the persistent odor of feces and urine in Disciplinary Segregation Unit 1 was sufficiently overwhelming that he experienced headaches, vomiting and loss of appetite as a result.  Defendants acknowledge that some odor occurred after other inmates smeared their cell floors, walls and ventilation systems with feces and urine.  However, they point out as well that plaintiff never brought to a doctor's attention the severe physical response he was allegedly having.  Thus, at a minimum, there is a factual dispute regarding the severity of the smell.  When evaluating defendants' motion for summary judgment, I must resolve this factual dispute in plaintiff's favor, as he is the non-moving party.  <u>Liberty Lobby</u>, 477 U.S. at 250; <u>Abdullahi v. City of Madison</u>, 423 F.3d 763, 773 (7th Cir. 2004).

Some degree of unpleasant odor is the natural by-product of housing many people in

13

a small and confined area, and the Eighth Amendment does not prohibit unpleasantness and discomfort.  Rhodes v. Chapman, 452 U.S. 337, 349 (1981).  However, the conditions described by plaintiff go beyond mere unpleasantness, but caused him to become ill. Therefore, taking plaintiff's personal assessment of the severity of the odor as true, I find that a reasonable jury could conclude that such conditions violate the Eighth Amendment.

Defendant Salter acknowledges that he was aware of the conditions in the Unit. Therefore, the only remaining question is whether he failed to take reasonable steps to ameliorate the odors.  (Because defendant Salter is an administrative captain assigned to Disciplinary Segregation Unit 1, it is reasonable to infer that he had some authority and responsibility to direct other staff members to maintain sanitary conditions in the unit.)

It is undisputed that two other prisoners' habits of smearing feces and urine around their cells caused the odors about which plaintiff complains.  These odors then passed through the ventilation system into plaintiff's cell.  There is a policy in place in the unit that when a prisoner smears feces, urine or blood in his cell, unit staff try to remove him from his cell as soon as possible in order to clean the cell with a power washer and a disinfectant cleaner.  Prison staff members attempted to clean the cells in plaintiff's unit as quickly as possible.

In a perfect world, other prisoners in Disciplinary Segregation Unit 1 would never smear feces and urine in their cells.  However, there is a limited amount that prison officials

14

can do to stop difficult prisoners from behaving in an inappropriate and disruptive manner. Instead, they must react reasonably to minimize the effect that these disruptive behaviors have on other prisoners.  In this case, it was not unreasonable for prison staff to remove the prisoners from their cells as quickly as possible after they defecated or urinated, and power wash and disinfect the cells.  It is possible that some odor lingered even after these steps were taken, but the fact that the clean-up effort could not remove the odor entirely does not make the approach itself unreasonable.  See, e.g., Sain v. Wood, 512 F.3d 886, 894 (7th Cir. 2008) (regular efforts to exterminate pests reasonable, even though some roaches remained). In fact, it is difficult to imagine what else prison officials could have done when faced with handling other prisoners bent on engaging in disgusting and disruptive behaviors. Therefore, I conclude that plaintiff has failed to adduce evidence that defendant Salter exhibited deliberate indifference to the conditions in Disciplinary Segregation Unit 1 and defendants' motion will be granted with respect to this claim as well.

ORDER

IT IS ORDERED that the motion for summary judgment of defendants Sean Salter, Greg Grams and Burt Tamminga, dkt. #19, is GRANTED.  Plaintiff Mark Marshall's motion for summary judgment, dkt. #15, is DENIED.  The clerk of court is directed to enter

15

judgment for defendants and close this case.

Entered this 1st day of July, 2008.

BY THE COURT:

*Barbara B. Crabb*

BARBARA B. CRABB
District Judge